1
2
3                                                              FILED IN THE
                                                          U.S. DISTRICT COURT
                                                     EASTERN DISTRICT OF WASHINGTON

4                                                        **Oct 26, 2020**

                                                          SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT

6                 EASTERN DISTRICT OF WASHINGTON

7    KATIE L. T.,

8                      Plaintiff,                NO:  2:19-CV-00388-LRS

9         v.                                     ORDER DENYING PLAINTIFF'S
                                                 MOTION FOR SUMMARY
10   ANDREW M. SAUL,                             JUDGMENT AND GRANTING
     COMMISSIONER OF SOCIAL                      DEFENDANT'S MOTION FOR
11   SECURITY,                                   SUMMARY JUDGMENT

12                     Defendant.

13

14        BEFORE THE COURT are the parties' cross-motions for summary judgment.

15   ECF Nos. 13, 14.  This matter was submitted for consideration without oral

16   argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

17   represented by Special Assistant United States Attorney Katherine Watson.  The

18   Court, having reviewed the administrative record and the parties' briefing, is fully

19   informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is

20   denied and Defendant's Motion, ECF No. 14, is granted.

21                            **JURISDICTION**

ORDER - 1

Plaintiff Katie L. T.[1] (Plaintiff), filed for disability insurance benefits and supplemental security income on December 8, 2015, alleging an onset date of July 1, 2014.  Tr. 258-59.  Plaintiff was determined to be eligible for supplemental security income as of February 1, 2016, Tr. 133-34, but disability insurance benefits were denied initially, Tr. 130-32, and upon reconsideration, Tr. 136-41.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 25, 2018.  Tr. 37-78.  On September 19, 2018, the ALJ issued an unfavorable decision, Tr. 14-36, and on September 19, 2019, the Appeals Council denied review.  Tr. 1-7.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1987 and was 30 years old at the time of the hearing.  Tr. 119, 258.  She dropped out of school in grade 12 and returned to school when she was 20 years old.  Tr. 1216.  She has "scattered" college credits.  Tr. 1216.  She has work experience as a nurse assistant, a retail cashier and stocker, and medical records scanner.  Tr. 67-68.  She testified that she started having gastrointestinal problems in 2012 and was eventually diagnosed with gastoparesis.  Tr. 47, 55.  The

---

[1] The Court uses only Plaintiff's first name and last initial to protect Plaintiff's privacy.

ORDER - 2

medical expert testified that the record contains diagnoses of bipolar disorder and anxiety.  Tr. 41.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115

ORDER - 3

(quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from

ORDER - 4

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity during the relevant period from her alleged onset date of July 1, 2014, through the date last insured of June 30, 2015.  Tr. 19.  At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments:

ORDER - 6

gastroparesis, obesity, degenerative disc disease, bipolar disorder, and unspecified anxiety disorder. Tr. 19. At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 20.

The ALJ then found that through the date last insured, Plaintiff has the residual functional capacity to perform sedentary work with the following additional limitations:

> she could never crawl or climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to industrial vibration and hazards; she would need to work in a building with ready access to a restroom; she could understand, remember, and carry out simple, routine, and repetitive tasks or instructions; she could maintain concentration, persistence, or pace for two-hour intervals between regularly scheduled breaks; she would require a predictable work environment with seldom change; she could tolerate occasional and superficial interaction with the public; and she could have no more than superficial (i.e., non-collaborative/no teamwork/no tandem tasks) with coworkers.

Tr. 23.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. 29. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that, through the date last insured, there are jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as document preparer, printed circuit board assembler, and surveillance system monitor. Tr. 29-30. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from

ORDER - 7

July 1, 2014, the alleged onset date, through June 30, 2015, the date last insured.  Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability insurance benefits under Title II of the Social Security Act.  ECF No. 13. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's impairments at step two;

2. Whether the ALJ should have developed the record by calling a medical expert;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 13 at 2.

## DISCUSSION

**A. Step Two**

Plaintiff contends the ALJ failed to properly consider her ileus at step two. ECF No. 13 at 4-6.  At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source.  20 C.F.R. § 404.1521.  A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment.  *Id*.  After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or mental ability to do basic work

ORDER - 8

activities.  20 C.F.R. § 404.1520(c).  However, the fact that a medically

determinable condition exists does not automatically mean the symptoms are

"severe" or "disabling" as defined by the Social Security regulations.  *See e.g.*

*Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key*

*v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Plaintiff contends objective evidence of ileus in the record establishes a

medically determinable impairment.  ECF No. 13 at 5-6.  Ileus is "a temporary lack

of the normal muscle contractions of the intestines," typically diagnosed by x-ray

and most commonly caused by abdominal surgery, although it may be caused by

drugs, an infection of the abdomen, or disorders outside the intestines.  *The Merck*

*Manual of Diagnosis and Therapy Consumer Edition* (April 2020),

https://www.merckmanuals.com/home/digestive-disorders/gastrointestinal-

emergencies/ileus#.  Plaintiff cites imaging findings of "probable ileus or

gastroenteritis" in April 2015 and an x-ray of Plaintiff's abdomen in September 2015

showing gaseous distention of the entire colon which "could represent ileus" and

asserts they constitute objective evidence of ileus.  Tr. 583, 589, 922.  Other findings

cited by Plaintiff do not mention ileus but are interpreted by Plaintiff as evidence of

ileus.  ECF No. 13 at 5-6 (citing Tr. 563, 618, 815, 920, 1106).

The ALJ did not err by not identifying ileus as a medically determinable or

severe impairment.  The findings identified by Plaintiff are qualified and do not rise

to the level of objective findings of ileus.  Despite an abdominal CT scan note of

"probable ileus or gastroenteritis" during an emergency room visit in April 2015, the

ORDER - 9

ultimate finding was that Plaintiff "had an extensive workup with no obvious organic etiology" and Plaintiff left the hospital against medical advice.[2]  Tr. 26, 831, 833.  The ALJ noted Otto Lin, M.D., a gastroenterologist, reviewed records in September 2015, and Dr. Lin observed the April 2015 CT scan was "unremarkable except for some possible mild ileus, manifesting as questionable air fluid levels."  Tr. 27, 558.  Dr. Lin did not diagnose ileus or attach any particular significance to the finding in assessing Plaintiff's symptoms.  Tr. 559-60.  Similarly, the September 2015 radiologist's impression that findings "could represent ileus" is qualified as a possibility, not a medical diagnosis.

Even if the ALJ should have found ileus is a medically determinable impairment, the symptoms of pain and diarrhea Plaintiff attributes to ileus were considered by the ALJ throughout the decision.[3]  Tr. 25-27.  "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5.  The ALJ considered evidence of Plaintiff's abdominal pain and diarrhea.  Tr. 25-27.  Any symptoms from possible ileus were

---

[2] Notably, Plaintiff was ultimately diagnosed with gastroenteritis.  Tr. 55.

[3] Plaintiff alleges that constipation was a symptom of ileus, but the records which mentions ileus do not identify constipation as a symptom.  ECF No. 13 at 6; ECF No. 15 at 2; Tr. 583, 589, 922.

ORDER - 10

therefore reasonably considered by the ALJ.  Thus, even if the ALJ erred by not specifically mentioning ileus at step two, any error was harmless.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

**B.    Onset Date and Duty to Develop the Record**

Plaintiff contends the ALJ erred by failing to obtain a physician medical expert to assess the date of onset of disability.  ECF No. 13 at 6-9.  Plaintiff was determined to be disabled at the initial level as of February 1, 2016 because her gastrointestinal disorder equaled Listing 5.06B.  Tr. 17.  Her Title XVI application for supplemental security income benefits was therefore granted, Tr. 133, but her Title II application for disability insurance benefits was denied because disability was not established before her date last insured of June 30, 2015.  Tr. 17, 21.  Plaintiff contends that although she did not equal Listing 5.06B until February 2016, "there was ambiguity as to whether the underlying condition may have caused a disabling RFC prior to that point (and before the DLI)."  ECF No. 13 at 8.  According to Plaintiff, this ambiguity triggered the ALJ's duty to develop the record by calling a medical expert.  ECF No. 13 at 8-9.

Where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date.  *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998); S.S.R. 83-20.  Ambiguities in the medical record may occur when there is a large gap in the medical record, or

ORDER - 11

when the alleged onset date and the date last worked are far in the past. *See*

*Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017). However, "[u]nder

ordinary circumstances, an ALJ is equipped to determine a claimant's disability

onset date without calling on a medical advisor." *Id.*

Here, the determination of disability as of February 2016 involved a specific

event: the installation of total parenteral nutrition (TPN) for supplemental nutrition

through a central venous catheter. Tr. 101, 359, 676. Listing 5.06 requires

documentation of inflammatory bowel disease or a combination of two other factors,

one of which is the need for supplemental daily nutrition either through a

gastrostomy or a central venous catheter. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

5.06. Leonard Comas, M.D., a reviewing physician, found that Plaintiff's records

show slow worsening of her pain, vomiting, and diarrhea over time, and noted that

TPN was started in February 2015. Dr. Comas concluded that although Plaintiff's

condition could not meet Listing 5.06 because there was no evidence of

inflammatory bowel disease, her combination of chronic pain, diarrhea, and the need

for a TPN equaled the listing in February 2016. Tr. 101; *see* 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 5.06B.[4]

---

[4] Dr. Comess found Plaintiff equaled Listing 5.06B based on subsections 3 and 6.

Subsection 3 involves findings of "[c]linically documented tender abdominal mass

palpable on physical examination with abdominal pain or cramping that is not

The ALJ agreed with Dr. Comas' finding that Plaintiff's gastrointestinal impairment did not meet or medically equal Listing 5.06 during the period relevant to the Title II application.  Tr. 21.  Once the ALJ has created a record and has a basis for selecting an onset date, the claimant who wishes to challenge that date bears the burden of proof.  *Armstrong*, 160 F.3d at 590.  In this case, there are no gaps in the record or uncertainty as to the onset date because it is based on specific medical evidence.  The question is "whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported." *Swanson v. Sec'y of Health and Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985).  There is no ambiguity regarding the basis for the onset of the disability finding and the ALJ did not err.

**C.    Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 13 at 13-22.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be

─────────────────

completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart."

ORDER - 13

expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the objective evidence does not support the level of limitation alleged. Tr. 24. While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted that three months prior to the relevant period, Plaintiff reported no nausea, vomiting or abdominal pain when she saw a provider regarding a ganglion cyst, Tr. 989, but in July 2014 she reported that she had diarrhea for two years with waxing and waning abdominal pain rated at "10/10." Tr. 24, 785. She was sent to the hospital where her exam was normal and ultrasound results were negative. Tr. 790. In September 2014, Plaintiff's lab results were all within normal limits, an x-ray of the abdomen showed no signs of obstruction, a CT of the head was within normal limits, and her blood sugar was normal, although her abdominal pain persisted. Tr. 801. Dr. Yang, a gastroenterologist, recommended eliminating refined sugar and eating a high fiber diet. Tr. 801. In October 2014, Plaintiff became angry when she was discharged from the emergency room because hospital personnel found no reason to admit her after a benign exam and blood work. Tr. 24, 569.

A few days later in October 2014, Bing Manawadu, M.D., prescribed morphine for its constipation effect. Tr. 26, 1106. In November 2014, Maria Ello,

ORDER - 15

M.D., noted Plaintiff's prior colonoscopies were normal and she had no hepatosplenomegaly, masses, hernia, or guarding although there was tenderness on palpation to her lower left quadrant. Tr. 26, 431, 433. An abdominal CT scan showed possible mild thickening of the sigmoid colon wall, fatty infiltration of the liver, and no evidence of bowel obstructions. Tr. 26, 494. Although there were some findings in Plaintiff's blood work, Dr. Ello only advised her to improve her diet and exercise. Tr. 26, 442. Plaintiff returned to Dr. Manawadu in December 2014 and indicated that she had no diarrhea and normal bowel movements and that the morphine seemed to be working well, and Dr. Manawadu opined that her symptoms were "very well controlled." Tr. 26, 1104.

During an emergency room visit for abdominal pain, nausea, and vomiting in January 2015, she was treated for gastritis and improved "greatly." Tr. 26, 535, 538-39. In February 2015, it was noted that Plaintiff had had "a substantial work-up for diarrhea that has been negative" and she did not meet the criteria for irritable bowel syndrome despite complaints of nighttime fecal incontinence. Tr. 623, 628. In April 2015, Plaintiff was admitted to the hospital with complaints of pain, nausea, and vomiting, but x-rays and lab tests showed no obvious organic etiology for Plaintiff's symptoms. Tr. 831. It was noted that she was still having abdominal pain, but Plaintiff left the hospital against medical advice. Tr. 833.

In July 2015, Plaintiff told Dr. Manadawu that tincture of morphine had drastically reduced the number of bowel movements to one a day without diarrhea, although she still experienced pain. Tr. 26-27, 1098. The same month, she told Dr.

ORDER - 16

1 Ello that with morphine, she was have two bowel movements per day and no

2 nighttime fecal incontinence but still had some breakthrough pain.  Tr. 27, 642.

3        The ALJ noted that the treatment record for the relevant period ends at that

4 point, as Plaintiff's date last insured is June 2015.  Tr. 27.  However, the ALJ also

5 noted that in September 2015, Dr. Otto Lin described Plaintiff's medical history,

6 which included unremarkable upper endoscopies and colonoscopies with biopsies in

7 August 2013 and September 2014.  Tr. 558.  A cholecystectomy and appendectomy

8 were performed in September 2014, but her symptoms did not improve.  Tr. 558.

9 An abdominal CT scan was done in April 2015 and was essentially normal, except

10 for possible mild ileus.  Tr. 558.  An MR angiogram was done in October 2014

11 which showed no abnormalities, and a small bowel version in January 2015 was

12 negative.  Tr. 558.  Plaintiff's blood work was noted to "have always been normal"

13 including blood work done in April 2015.  Tr. 558.  Plaintiff had tried omeprazole,

14 Citrucel, MiraLax and a probiotic, none of which was particularly effective.  Tr. 558.

15 She used morphine and fentanyl to control abdominal pain and cramping.  Tr. 558.

16        Based on the foregoing, the ALJ reasonably found that the objective evidence

17 does not support Plaintiff's alleged disabling limitations before her June 2015 date

18 last insured.  Plaintiff notes a December 2015 finding of "[m]arkedly abnormal

19 gastric emptying study showing significant delay in gastric emptying."  Tr. 768.

20 Plaintiff also notes a capsule endoscopy done in June 2016 was aborted because the

21 capsule remained in her stomach due to "such severe gastroparesis that the

procedure could not be completed."  ECF No. 13 at 16 (citing Tr. 559).  However,

ORDER - 17

Dr. Lin actually stated only that the failure of the capsule exam "brings up the possibility of gastroparesis, possibly idiopathic, but also it could be partly due to the multiple narcotic medications that the patient is taking." Tr. 559. By this point, Plaintiff met listing 5.06 per Dr. Comas. Tr. 101. Neither of these findings, both of which occurred outside the relevant period, negates the ALJ's conclusion that the objective evidence does not support Plaintiff's allegations of disabling during the period at issue.

Second, the ALJ found some records suggest a secondary gain motivation. Tr. 24. Evidence of secondary gain may undermine a claimant's testimony about the severity of her symptoms. *See Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1186 (9th Cir. 2015); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). The ALJ noted that during an October 2014 emergency department visit, she stated that here last visit to an ER was four days prior, but records showed that she had presented to a different ER earlier that day. Tr. 24, 812. She requested a prescription for pain medication but declined Bentyl, a medication to reduce symptoms of stomach and abdominal cramping, because she already had it at home. Tr. 812. It was noted that she had been seen in the ER 12 times in the previous 12 months and that she tends to get angry, screams at times, and "does not want to leave the ER when cleared medically." Tr. 812. The next day, Plaintiff drove over two hours to another hospital and reported similar symptoms. Tr. 25-26, 567. The examining doctor noted a benign non-surgical exam and no sign of systemic infection. Tr. 26, 569. Plaintiff reported that when she takes Imodium her diarrhea

ORDER - 18

1   is controlled.  Tr. 569.  Plaintiff requested admission but the physician found no

2   reason to admit her and discharged her as medically stable.  Tr. 26, 569.

3          Plaintiff offers various explanations for these events, such as frustration and

4   distress from a lack of diagnosis.  ECF No. 13 at 17-18.  However, the ALJ's

5   conclusion that these situations were motivated by secondary gain is a reasonable

6   inference from the evidence.  The court must uphold the ALJ's decision where the

7   evidence is susceptible to more than one rational interpretation.  *Magallanes v.*

8   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

9          Third, the ALJ found Plaintiff's physical symptoms improved with

10  medication.  Tr. 26.  The effectiveness of treatment is a relevant factor in

11  determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3);

12  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

13  (determining that conditions effectively controlled with medication are not disabling

14  for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d

15  1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can

16  undermine a claimant's complaints of debilitating pain or other severe limitations).

17  As noted *supra*, Plaintiff reported in October 2014 that when she took Imodium her

18  diarrhea was controlled.  Tr. 569.  Later that month, Dr. Manawadu prescribed

19  tincture of morphine for diarrhea, and in December 2014 Plaintiff said the morphine

20  seemed to be working well and that she had no diarrhea and normal bowel

21  movements.  Tr. 26, 1104.  Dr. Manawadu noted that her symptoms were "very well

    controlled" at that point.  Tr. 26, 1104.  During an emergency room visit for

ORDER - 19

abdominal pain, nausea, and vomiting in January 2015, Plaintiff improved greatly when treated for gastritis.  Tr. 26, 535, 538-39.  In July 2015, just after her date last insured, Plaintiff twice reported that tincture of morphine had drastically reduced the number of bowel movements to one or two a day without diarrhea, although she still had some pain.  Tr. 26-27, 642, 1098.  The ALJ reasonably concluded that Plaintiff's diarrhea and other physical symptoms responded to treatment during the period at issue.

Fourth, the ALJ found Plaintiff's mental symptoms improved with medication.  Tr. 27-28.  The ALJ noted that three months before the alleged onset date, Plaintiff reported her bipolar symptoms were "largely well controlled" by medication although she wanted help controlling anxiety symptoms due to stressors.  Tr. 27, 995.  In August 2014, Plaintiff reported increased symptoms after having reduced her dosage of Seroquel in preparation for fertility treatments, so the dosage was returned to the level "where she felt like she was getting the most benefit" and anti-anxiety medication was added  Tr. 410.  In November 2014, Plaintiff reported that she thought she was doing "pretty good, I think my medications are right where I need them to be."  Tr. 28, 414.  In April 2015, Plaintiff reported that "mental healthwise she seems to be doing fairly well" and that her medications were working appropriately.  Tr. 28, 421.  After the relevant period in September 2015, she reported that her mood and other mental health symptoms had worsened, but she had been out of medication for three weeks.  Tr. 28, 423.  The ALJ reasonably found that Plaintiff's mental health symptoms were controlled with medication.

ORDER - 20

Fifth, the ALJ found inconsistencies in the evidence.  Tr. 24, 26-27.  An ALJ may reject a claimant's testimony if her statements are inconsistent.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ observed that Plaintiff's weight increased from 250 pounds (Tr. 940) to 276 pounds (Tr. 1052) between August and November 2013, which the ALJ found contradicts her reports of ongoing vomiting and diarrhea.  Tr. 24, 944, 1052.  In March 2015, Plaintiff told Maria Ello, M.D., that she felt she was not getting proper nutrients, but Dr. Ello noted her weight was stable and she was able to eat shakes.  Tr. 625.  Plaintiff contends the ALJ failed to consider that weight gain is "a complicated issue" and that Plaintiff's weight fluctuated throughout the record.  ECF No. 13 at 14 (citing Tr. 468, 508, 627, 630, 633, 806, 808, 811, 820).  Even if the inferences made by the ALJ were not entirely within the scope of the evidence, the ALJ cited other inconsistencies in the evidence regarding Plaintiff's symptom claims.

The ALJ noted that three months prior to the relevant period, Plaintiff did not report nausea, vomiting or abdominal pain, Tr. 989, but in July 2014 she reported that she had diarrhea for two years with waxing and waning abdominal pain rated at "10/10." Tr. 24, 785.  She also told Dr. Ello on February 6, 2015, that she experienced nighttime fecal incontinence 20 or more times and that her diarrhea was worse than ever, Tr. 620-21, but one week later, on February 12, 2015, she told Dr. Manawadu she had about two bowel movements a day and Dr. Manawadu found her diarrhea was very well controlled, Tr. 1102.  Tr. 26.  Plaintiff attributes these

inconsistencies to the waxing and waning of her symptoms, ECF No. 13 at 15-16,

but the ALJ's interpretation of the evidence is reasonable.

Sixth, the ALJ found Plaintiff's activities were inconsistent with the level of

limitation alleged. Tr. 24. Even if a claimant's daily activities do not demonstrate a

claimant can work, they may undermine the claimant's complaints if they suggest

the severity of the claimant's limitations were exaggerated. *See Valentine v.*

*Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ noted

Plaintiff's testimony that she could barely function around home since 2012, but her

medical records reflect she was able to drive herself alone to appointments in 2014

and 2015. Tr. 24, 49-50, 431, 455, 461, 466. The ALJ also observed that in August

2014, Plaintiff reported manic episodes where she would stay up for two days at a

time and clean a lot and that she worried excessively about routine chores,

contradicting her testimony that she could not function around the house. Tr. 28,

409. Plaintiff takes issue with the ALJ's characterization of her testimony, but the

distinction as to timing and severity made by Plaintiff is not evident in her

testimony. ECF No. 13 at 15 (citing Tr. 49).

Plaintiff testified that before she got sick, she could work and take care of her

house, but after she got sick in 2012, "then I couldn't do anything. I couldn't even

barely shower afterwards." Tr. 50. She testified she had a friend come over to clean

because she was not even cleaning. Tr. 50. When asked about the period after she

received TPN in 2014, she testified that she spent most of her time sleeping. Tr. 54.

She could walk for no more than 10 minutes before she needed to sit down and use

ORDER - 22

the restroom.  Tr. 54.  The ALJ reasonably characterized Plaintiff's testimony as indicating that after 2012 she was "barely able to function" and properly found that manic cleaning is inconsistent with Plaintiff's alleged limitations.  Driving to medical appointments is less a less persuasive inconsistency without details regarding time and distance.  Nonetheless, the ALJ's finding in combination with the other reasons cited were reasonable and supported by the record.

**D.    Medical Opinions**

Plaintiff contends the ALJ failed to properly consider the medical opinion evidence.  ECF No. 13 at 9-13.  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

ORDER - 23

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1. *L. Comess, M.D. & Howard Platter, M.D.*

Plaintiff contends the ALJ failed to properly consider the opinions of state reviewing physicians Leonard Comess, M.D., and Howard Platter, M.D. ECF No. 13 at 10-11. In July 2016, Dr. Comess reviewed the record and found Plaintiff equaled Listing 5.06B in February 2016 and made a residual functional capacity assessment for the period from her alleged onset date of July 1, 2014 to January 31, 2016. Tr. 101, 103-04. Dr. Comess found Plaintiff was capable of lifting and carrying both frequently and occasionally up to ten pounds and could stand, sit and walk for six hours in and eight-hour day, and that Plaintiff needed to be close to a bathroom due to diarrhea. Tr. 103-104. In October 2016, Dr. Platter reviewed the record, found "no contradiction" to Dr. Comess' assessment, and assessed the same limitations. Tr. 117, 120.

The ALJ gave significant weight to the opinions of Dr. Platter and Dr. Comess, noting that they reviewed the record beyond Plaintiff's date last insured.

Tr. 27. The ALJ agreed with the limitations assessed, including that Plaintiff needs ready access to a restroom, and incorporated them into the RFC finding. Tr. 23, 27.

Plaintiff contends the ALJ "never addressed that these sources gave this limitation in the context of finding [Plaintiff's] statements as to the frequency of her diarrhea episodes was supported by objective evidence alone." ECF No. 13 at 10. Under the heading "Assessment of Policy Issues," Drs. Platter and Comess were asked if Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone, and each indicated "yes." Tr. 88, 119. Plaintiff argues that since the ALJ credited the opinions, the ALJ should have adopted the conclusion that the objective medical evidence supports Plaintiff's statements regarding her symptoms.

As discussed *supra*, the ALJ's findings regarding Plaintiff's symptom statements are supported by substantial evidence. There is no basis to conclude that by indicating that Plaintiff's symptom statements are supported by the evidence, Drs. Platter and Comess intended anything other than a determination that Plaintiff's impairments equaled a listing in February 2016 and an assessment of an RFC supported by the record for the period from alleged onset date until January 31, 2016, which is exactly what was credited by the ALJ.

Plaintiff contends that including the limitation that Plaintiff needs "ready access to a restroom" indicates the doctors credited her allegation of 22-30 bowel movements per day. ECF No. 13 at 10. As noted by Defendant, the record cited by Plaintiff and reviewed by the doctors indicates that she told Dr. Mandawadu in

ORDER - 25

October 2014 that she could have up to 10 bowel movements a day, and "which in [the] past has been about 22 to 30 bowels [sic] movements in a day." Tr. 1106. However, the record also indicates that Dr. Mandawadu prescribed morphine which reduced or controlled her diarrhea during the relevant period. Tr. 1105 (November 2014, taking morphine and has "normal bowel movements at this time. She does not have any diarrhea."); Tr. 535 (January 2015, "no diarrhea"); Tr. 1102 (February 2015 "she has about two bowel motions a day. The morphine sulfate which was working initially has stopped working as well. She take [sic] tincture of morphine, which seem [sic] to initially decrease the motility and decrease the number of bowel motions."); Tr. 642 (July 2015, morphine dose titrated to control profound diarrhea, 2 bowel movements per day, no nighttime fecal incontinence); Tr. 1098 (July 2015, "Patient is very happy with the decrease in the number of bowel motions and the formed stool she is having at this particular time."). Dr. Platter and Comess considered the record as a whole and there is no indication that they gave greater weight to Plaintiff's statements regarding diarrhea without considering the greater context of treatment and improved diarrhea symptoms. The ALJ considered this evidence in evaluating Plaintiff's symptom statements and, as discussed *supra*, made a finding supported by substantial evidence.

    *2. Enid Griffin, Psy.D.*

    Plaintiff contends the ALJ failed to properly consider the opinion of Dr. Griffin, an examining psychologist. ECF No. 13 at 11-13. In July 2010, Dr. Griffin completed a DSHS Psychological/Psychiatric Evaluation form and narrative

ORDER - 26

statement and indicated a diagnosis of bipolar II disorder by history. Tr. 1209-19. She assessed marked limitations in the ability to exercise judgment and make decisions and in the ability to respond appropriately to the pressures and expectations of a normal work setting, plus moderate limitations in five functional areas. Tr. 1213. The ALJ gave "little to no weight" to Dr. Griffin's opinion. Tr. 27.

First, the ALJ observed that Dr. Griffin's opinion regarding functional capacity is based on Washington State DSHS regulations rather than the Social Security Act. Tr. 27. The regulations provide that the amount of an acceptable medical source's knowledge of Social Security disability programs and their evidentiary requirements may be considered in evaluating an opinion, regardless of the source of that understanding. 20 C.F.R. § 404.1527(c)(6). Nonetheless, the regulations also require that every medical opinion will be evaluated, regardless of its source. 20 C.F.R. § 404.1527(c). The ALJ noted that DSHS regulations "tend to rely primarily on an individual's self-reported symptoms [rather] than objective medical records." Tr. 27. Although state agency disability rules may differ from Social Security Administration rules regarding disability, it is not apparent that the differences in rules impacts Dr. Griffin's opinion without further analysis by the ALJ. This is not a specific, legitimate reason in this case. However, the ALJ cited other legally sufficient reasons for giving little weight to Dr. Griffin's opinion, so any error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008)

Second, the ALJ gave no weight to the opinion because of its age.  Tr. 27.

"Medical opinions that predate the alleged onset of disability are of limited

relevance" *Carmickle*, 533 F.3d at 1165.  Dr. Griffin's examination and opinion

occurred in July 2010, four years before the July 2014 alleged onset date.  There is

no basis to conclude that the limitations assessed continued at the same degree of

severity for four years.  Although Plaintiff argues that Dr. Griffin's indication that

the impairments assessed could last nine months or more suggests a basis for giving

weight to the opinion, ECF No. 13 at 12-13, Dr. Griffin also opined that Plaintiff's

impairment could last for as little as six months.  Tr. 1214.  The ALJ reasonably

declined to extend Dr. Griffin's opinion to the relevant period and this is a specific,

legitimate reason for rejecting the opinion.

Third, the ALJ gave little weight to Dr. Griffin's opinion based on the opinion

of the medical expert, Nancy Winfrey, Ph.D., who reviewed all of the evidence from

the relevant period and found no more than moderate limitations in any functional

area.  Tr. 23, 28.  The opinion of an examining or treating physician may be rejected

based in part on the testimony of a non-examining medical advisor when other

reasons to reject the opinions of examining and treating physicians exist independent

of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831.  Dr. Winfrey noted

some waxing and waning of symptoms and that there had not been much treatment,

and she opined that Plaintiff could handle simple and complex instructions; she

needs to be in a predictable environment with seldom change; she could do fast-

paced production rate work; she has no limit on judgment or decision-making in the

ORDER - 28

workplace; and she could have superficial interaction with the public and is limited to no teamwork or tandem work tasks with coworkers where she or anyone else was reliant on her. Tr. 44-46. The ALJ gave great weight to Dr. Winfrey's opinion because she reviewed all of the evidence of record, her conclusions are consistent with the record, she has expertise in clinical psychology, and she is familiar with Social Security regulations. Tr. 28. The ALJ reasonably gave weight to Dr. Winfrey's opinion over the opinion of Dr. Griffin.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** October 26, 2020.

_____

LONNY R. SUKO
Senior United States District Judge

ORDER - 29